[Civ. No. 26643.   Second Dist., Div. Two.   Feb. 7, 1963.]

ROBERT W. ROSE, Plaintiff and Respondent, v. CHRYS-LER MOTORS CORPORATION et al., Defendants and Appellants.

H. L. Breidenbach, Lewis, Varni & Ghirardelli and Neville R. Lewis for Defendants and Appellants.

John M. Podlech for Plaintiff and Respondent.

HERNDON, J.—This case comes to us by certification from the Appellate Department of the Superior Court, in and for the County of Los Angeles, following its decision affirming a judgment of the Municipal Court of the Los Angeles Judicial

District, which awards damages to plaintiff, the purchaser of an automobile, against both the manufacturer and the dealer who sold the vehicle to plaintiff for breach of warranty. We have concluded that the decision of the appellate department was correct.

This appeal was taken upon an agreed statement of facts; hence, no issue is presented in regard thereto. Moreover, the determinative issue of law presented for our determination is narrow and well defined. As the parties have recited in said agreed statement: "The plaintiff alleged in his complaint and relied in the lower Court upon a printed dealer's warranty delivered with a Plymouth automobile purchased by plaintiff from defendant Holt Motor Co. and upon the printed Uniform Warranty of the Automobile Manufacturers Association as contained and set forth in paragraph 19 of that certain 'Sales Agreement Between Plymouth Direct Dealer and Chrysler Corporation Plymouth Division' entered into between defendant Chrysler Motors Corporation and defendant Holt Motor Co., dated February 17, 1959, attached to Answer of defendant Holt Motor Co. and received in evidence pursuant to stipulation at time of trial."

Respondent's complaint alleges in substance that by written instruments appellants had warranted the vehicle purchased by him to be free from defects in material and workmanship during a specified period; that a defect existed in the wiring system which had caused a fire resulting in very substantial damage; that respondent had complied with all the conditions of the warranties, but that appellants had refused to comply therewith; that as a result thereof respondent had been damaged in the amount of $2,028.59.

Respondent purchased the automobile on March 5, 1960. From the beginning, it was apparent that its wiring system was defective. On a number of occasions, he returned the car to the seller, appellant Holt Motor Company, which attempted to correct the defect. On April 30, 1960, approximately 55 days after the date of purchase, the car was severely damaged as the result of flames emanating from under the instrument panel. Appellant Holt Motor Company picked up the car but refused to repair it or replace its damaged parts. As above indicated, one of the documents under consideration is the standard "warranty" form devised by the Automobile Manufacturers' Association and adopted by all the major automobile manaufacturers. It provides, in pertinent part, as follows:

"We, your selling dealer, *warrant each new motor vehicle sold by us to be free from defects in material and workmanship* under normal use and service, our obligation under this warranty being limited to making good at our place of business, without charge for replacement labor, any part or parts thereof, including all equipment or trade accessories (except tires) supplied with the motor vehicle, which shall within ninety (90) days after making delivery of such vehicle to the original purchaser or before such vehicle has been driven four thousand (4,000) miles, whichever event shall first occur, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any liability in connection with our sale of motor vehicles.'' (Italics added.)

Appellants contend that, although it is clearly stated that "each new motor vehicle" is warranted "to be free from defects in material and workmanship,'' the other quoted clauses and parenthetical insertions contained in the instrument and relating to their obligations in the event of a breach must be so interpreted that in substance it is not the *"vehicle"* that is to be considered free from defects, but each of the thousands of connected and interdependent parts thereof considered solely as separate units completely unrelated to each other.

In other words, appellants would have us hold that any reasonable person reading this document would understand that if a two-cent connecting rod bolt should prove to be defective when he attempted to start his engine, and, as a result thereof, a rod should be driven through the engine block, he would not be entitled to have the damage to the motor repaired or any destroyed parts replaced other than the two-cent bolt. Further, that this "reasonable" person would also realize that it was his burden to dismantle his ruined engine, determine the identity of the defective part, and then submit it to the seller for analysis in order to fulfill a condition precedent to his right to receive the new bolt. Finally, he should understand from a reading of this document that if the bolt were lost or destroyed as a result of damage resulting from its defective condition, then the seller would be under no responsibility to him whatsoever.

"The language of a contract is to govern its interpretation,

if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) To demonstrate that the above illustration is not an improbable *reductio ad absurdum* the following language appears in appellant Holt Motor Company's brief:

"The Trial Court found that the fire in the Plymouth automobile was caused by a defect in the electrical wiring system. Plaintiff failed to allege the value of the wiring system or the defective part of such wiring system, and failed to prove the value thereof. The replacement of the defective part was the only obligation of the defendant and appellant Holt Motor Co. under the written limited warranty and under the authorities cited above." The "defective part of the wiring system" apparently was destroyed in the fire.

We cannot hold that the instant document must be given an interpretation that would provide only an "illusory" protection, and which, considered in context with the basic warranty made, would be tantamount to a fraudulent defeat of the natural understanding of the purchaser. "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Civ. Code, § 1649.)

In the same booklet wherein the warranty agreement is contained, there is an owner service certificate which reads as follows: "2. Explanation of Warranty: As part of our sale of the vehicle described in this certificate, we extend to you the Authorized Plymouth Dealer's Warranty. (See Warranty on back of this certificate.) The Warranty Period is 90 days after the date of delivery or 4,000 miles of operation, whichever occurs first. During this Warranty Period, we will make *any necessary adjustments* or replace *any parts,* except tires, which *our inspection* reveals are required because of *defective workmanship or materials,* without charge for labor or materials; provided such replacement is not required as the result of: (a) Accident, abuse or negligence. (b) Repairs or alterations during the Warranty Period by other than an authorized Plymouth dealer. (c) Use of parts not made, sold or approved by Chrysler Corporation." (Italics added.)

Manifestly appellants' "explanation" of their warranty is completely inconsistent with the interpretation now urged by them. That is, it does not even purport to be limited to individual parts considered in the abstract, but states that they will make "*any* necessary adjustment or replace *any*

parts . . . required because of defective *workmanship or materials*, without charge for labor or material."

What then is the proper interpretation to be placed upon the contractual provisions here presented? Civil Code, section 1647, provides: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Section 1650 provides that "Particular clauses of a contract are subordinate to its general intent." Section 1652 indicates that "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." Section 1653 states: "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." Section 1654 provides: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. . . ." And section 1655 states: "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention."

Without in any way attempting to set the limits of responsibility created by this warranty agreement, it appears a reasonable interpretation thereof that if, as here, the purchaser notifies the promisors of a defective condition and the dealer takes possession of the vehicle itself, the responsibility of the warrantors extends to making all necessary adjustments and replacing all parts which are required because of defective workmanship or materials existing in the vehicle considered as a whole and without regard to whether or not an individual part was originally defective per se. This is the logical import of appellants' own "Explanation of Warranty."

It is a familiar rule that if a contract is ambiguous the construction given to it by the acts and conduct of the parties with knowledge of its terms and before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court. (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 761-762 [128 P.2d 665].) What then was the conduct of the parties in the instant case.? The agreed statement provides the following information:

"Mr. Don Fanning of Holt Motor Co. testified that he had

worked for said company since 1950 in several capacities, including Assistant Parts Manager, Body Shop Manager, and New Car Service Manager, and was present when the delivery, or attempted delivery, of the station wagon to Mr. Rose was made. He recalled that the battery was found dead, and he refused to release the car, and upon attempting to install a new battery a short in the system was evidenced by sparks flying from the cables and terminals of the battery. He checked the car thoroughly and found that the screw holding down the step-plate on the rear left door of the car had pierced the insulation of a wire running through the rear of the station wagon, and he repaired the pierced insulation by taping the wire and moved the wire so the screw did not cause a short and the car was released. After the car was released, Mr. Rose came back several times with additional complaints, which were remedied.''

It is abundantly clear that at no time prior to the incident which forms the basis of this action did appellants ever assert that their liability was restricted to replacing defective parts or that respondent was under any obligation to determine, identify and provide for their inspection, any part claimed to be defective. The testimony given by the ''New Car Service Manager'' indicates that the car itself was returned, accompanied only by ''complaints,'' and that appellants assumed the obligation of locating the problem and remedying it. It is also clear from the above quoted testimony that appellants did not regard their obligation as being limited to the replacement of defective parts only. That is, neither the ''step-plate screw'' nor the ''wire'' was defective, per se, but as the result of faulty workmanship in their placement, the *vehicle* was rendered defective. This problem was ''remedied,'' not merely by replacing a defective part, but by ''repair[ing] the pierced insulation by taping the wire and mov[ing] the wire so that the screw did not cause a short.''

Having adopted this reasonable interpretation of the responsibilities of appellants in the event of a breach of their warranty, we reach the question as to the extent of the relief to which respondent was entitled in the instant case.

The written warranty excludes all implied warranties but not the obligation which flows from nonperformance of the stated agreement to replace (or properly adjust); the law reads into the transaction the measure of damages prescribed by Civil Code section 1789, subdivision (6)— ''. . .

the loss directly and naturally resulting in the ordinary course of events from the breach of the warranty.''

██ The vendor does not have an unlimited time for performance of its obligation to replace. (46 Am.Jur., Sales, § 732, p. 858; 77 C.J.S., Sales, § 340, p. 1235.) In a situation such as the one at bar where the buyer has repeatedly sought performance of the seller and failed to receive it, the promise of the latter is to be deemed broken and the prescribed measure of damages applied—in this instance the loss in value of the car directly attributable to the dealer's failure to ''replace'' a defective part or parts.

The case of *Allen* v. *Brown,* 181 Kan. 301 [310 P.2d 923], affords satisfactory precedent for the views just expressed. In that case an automobile was sold under an express warranty in terms substantially the same as the one at bar and the buyer was confronted with vibration and noise from the beginning and to such a degree as to make the car unacceptable. He returned it to the seller within the prescribed time for correction, but without any substantial results. In an action brought upon the warranty, he was held entitled to recover the full measure of damages. The Supreme Court of Kansas reasoned as follows:

''As is often the case in the purchase of a new automobile, the purchaser on discovering mechanical conditions which do not seem to be normal in the operation of the motor vehicle, will return the automobile to the dealer from whom the purchase was made. The particular defect is usually unknown to the purchaser and it is upon the dealer that he relies for discovery of the defect causing the unusual mechanical functioning of the vehicle.'' (P. 927 [310 P.2d].) ''The purchaser of a new automobile does not know the precise cause, and the dealer with his mechanics may, after calling in the factory experts and representatives, take many months to locate the defect.

''Under an express warranty as alleged in the petition, it would place a tremendous burden upon the purchaser of a new motor vehicle to find the precise part or parts of the vehicle which were defective and direct the dealer to replace them or remedy the defect. If the operation of such vehicle is mechanically defective and the automobile is returned to the dealer for the purpose of correcting these defects, it is incumbent upon the dealer to find such defective part or parts and replace them pursuant to the terms of the warranty or to

locate the assembly that has been improperly assembled and remedy the defect . . . .

■ "Where, as in this case, the express warranty contemplates that the seller's liability for a breach of warranty does not attach until he has had an opportunity to remedy the defects, his failure or refusal to act, where such opportunity is afforded the seller, fixes his liability. Under these circumstances the following is quoted from 77 C.J.S., Sales, § 340, p. 1235: '. . . An unsuccessful effort to remedy the defects renders the seller liable on his warranty; and the buyer is not bound to allow him a second opportunity, or to permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty. . . .' " (P. 928 [310 P.2d].) The court in this respect relied in part upon *Cobb* v. *Truett* (La.App.) 11 So.2d 120, 121, and *Peterson Co.* v. *Parrott*, 129 Me. 381 [152 A. 313]. Concerning the matter of damages the court said:

"To what extent the plaintiff has been damaged is primarily a question for the jury to determine. The burden of proving damages rests upon the plaintiff. The petition alleged damages to the full extent of the purchase price of the automobile. The plaintiff has further alleged consequential damages resulting from the loss of use of the automobile, inconvenience to himself and time lost. . .

■ "The measure of damages for breach of warranty is the loss directly and naturally resulting from the breach of warranty. In the absence of special circumstances showing proximate damage of a greater amount, this is the difference between the value of the goods at the time of delivery and the value they would have had if they had conformed to the warranty. It is thus clear that consequential damages, if properly pleaded and proved, may be recovered by reason of breach of warranty." (P. 929 [310 P.2d].)

This reasoning appears to us to be eminently sound. ■ We conclude that its application to the facts at bar justifies the trial court's award to the plaintiff of the full amount of damage suffered by his car when it was destroyed by fire due to the failure of the seller, after numerous opportunities afforded him, to find and correct the defective part or parts which led to the ultimate disaster.

The judgment as to Chrysler Motors Corporation, a corporation, and Holt Motor Company, a corporation, is affirmed. The judgment as to Plymouth-DeSoto-Valiant Division of the

Chrysler Motors Corporation, a corporation, is reversed. Respondent is awarded his costs.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied March 4, 1963.