**COX MOTOR CAR COMPANY, Appellant,**

**v.**

**Roy CASTLE, Appellee.**

Court of Appeals of Kentucky.

April 29, 1966.

J. K. Wells, Paintsville, for appellant.

Eugene C. Rice, Paintsville, for appellee.

CULLEN, Commissioner.

Cox Motor Car Company appeals from a judgment which awarded appellee Roy Castle $2,000 damages for breach of warranty in the sale to him of a Chevrolet truck by the appellant and which denied appellant recovery on its counterclaim for $1,728.28 alleged to be due as the unpaid balance of the purchase price of the truck.

Castle purchased the truck, new, from Cox Motor Company in December 1960. The written warranty given with the truck was in part as follows:

> "Dealer warrants each new Chevrolet motor vehicle and chassis * * * sold by Dealer to be free from defects in material and workmanship under normal use and service, Dealer's obligation under this warranty being limited to making good any part or parts thereof which shall, within ninety days after delivery of such vehicle or chassis to the original purchaser or before such vehicle or chassis has been driven 4,000 miles, whichever event shall first occur, be returned to Dealer at Dealer's place of business and which Dealer's examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied, * * *".

Within a month Castle brought the truck back and complained of a serious vibration or shimmy. Cox's employe told him that there was nothing that could be done, "it was just the nature of the truck." Two more times within six months of the date of purchase Cox again brought the truck back with the same complaint, and again received the same answer.

In May 1962 the frame of the truck broke, either causing or resulting from the truck's going into a ditch. Cox put in a new frame, which was paid for by Castle's collision insurance carrier. The truck continued to have shimmy troubles and after an inspection by a representative of Chevrolet Division of General Motors the Division arranged to have still another new frame installed. (This took four months.) This magnified rather than ameliorated the shimmy problem, with the result that Castle final-

ly threw in the towel and "parked" the truck. He ceased making payments on the purchase price and the truck was repossessed by G.M.A.C., which held the paper. Thereafter Castle brought the instant action seeking damages for breach of warranty. Cox counterclaimed for some $1,700 alleged to be the balance of the unpaid purchase price.

Castle claimed direct damages, as difference in market value, in the amount of $2,750. He also sought consequential damages, for loss of use, in the amount of $6,400. The instructions authorized a finding for the plaintiff on each claim, but limited the maximum recovery for consequential damages to $2,000. The jury awarded him only $2,000, which was well within the proof of direct damages alone. The verdict as concerns the counterclaim was that "the plaintiff * * * should not be required to pay the counterclaim."

The appellant maintains that its only liability would be under the express written warranty; that there was no proof of breach of that warranty; and that even conceding proof of breach the measure of damages would be the cost of replacing the defective parts, not the difference in market value of the truck.

■ Under the Uniform Commercial Code, particularly KRS 355.2–316 and 355.2–719, the parties could by contract exclude implied warranties and could limit remedies for breach of warranty. So the contract here involved validly excluded all warranties other than the one expressly stated, and it validly limited the remedy to replacement of defective parts. However, it does not follow that there was prejudicial error in the trial and decision of the instant case, in that recovery was authorized and allowed for difference in market value, and in that recovery was authorized (but we think not allowed) for loss of use.

■ To begin with, we think there was sufficient proof of breach of the express warranty. The evidence makes clear that from the outset there was something seriously wrong with the truck—something was defective. We do not accept the appellant's contention that the duty was on the buyer to point out what parts were defective and to ask replacement of those specifically. It would not be reasonable to put that duty on the buyer. Furthermore, the contract clearly contemplated an "examination" by the seller. It is our opinion that the duty was on the seller, upon complaint being made of unsatisfactory operation of the truck, to make an examination designed to disclose the cause. And we think that when, as here, the seller, having been presented with a well-founded complaint of defective condition, simply gives the buyer the "brushoff", there has been a breach of warranty.

■ A breach having been established, it is obvious that the contract does not contemplate that the remedy shall be by suit for *specific performance* of the agreement to replace the defective parts. Clearly the contract envisions damages in the form of the monetary *cost* of such replacement. The trouble is that in the instant case the buyer did not know and could not reasonably be expected to know what parts were causing the shimmy. The seller, who was in the best position to identify the offending parts, simply refused to recognize that there was any defect and tried to wash his hands of the whole thing. Under those circumstances we think that the whole truck properly may be considered one big defective part, and the measure of damages properly would be the cost of replacing the truck with one not defective, which would be the same as the difference in market value. The seller, not having come forward with proof that anything less than a defective condition of the entire truck was responsible for its proved unsatisfactory operation, cannot complain.

■ We conclude, then, that the instructions properly authorized recovery of general damages measured by difference in market value. We also conclude that the instructions *improperly* authorized recovery of damages for loss of use, because the contract expressly excluded any consequential

damage remedy. However, it appears that the verdict did not in fact allow anything for consequential damages (since the $2,000 awarded was within the proof of difference in market value) so the error in the instructions was not prejudicial.

We come now to the matter of the denial of recovery on the appellant's counterclaim for the unpaid balance of the purchase price. This has some peculiar aspects.

The counterclaim pleading alleged that Cox had sold the truck to Castle on a conditional sale contract and that the contract *was assigned to G.M.A.C.*; that thereafter several refinancing agreements were executed between Castle and G.M.A.C.; that there was a balance of $1,727.28 due under the contract as refinanced; and that Castle owed that amount *to Cox*. On the face of this pleading no claim in favor of Cox was stated, because the pleading alleged that Cox had assigned the contract to G.M.A.C. and all subsequent dealings were with G.M.A.C., which was not a party to the lawsuit. This defect probably was remedied by some rather casual testimony that, pursuant to an indemnifying agreement in the assignment document, Cox paid to G.M.A.C. the amount of the unpaid balance of the refinanced purchase price. This would seem to give Cox a claim against Castle by way of subrogation.

But still another obstacle stands in the way. According to the evidence the truck was repossessed. (Apparently it was repossessed by G.M.A.C. and then turned over to Cox.) However, we find nothing in the record to show that there was a sale and an insufficiency of the proceeds thereof to cover the balance due on the conditional sale contract. Certainly Cox could not keep the truck and still make a claim for the amount of the unpaid balance on the contract. Having repossessed the truck, Cox was required to liquidate it at reasonable public sale, as a condition of seeking further recovery from Castle, and Castle's obligation became limited to whatever deficiency remained after such a sale. KRS 355.9–503 to 355.9–505. General Motors Acceptance Corporation v. Dickinson, 249 Ky. 422, 60 S.W.2d 967; C. I. T. Corporation v. Thompson, 293 Ky. 637, 169 S.W.2d 820.

In the absence of evidence that there was a sale and a deficiency we think Cox did not make out a valid claim. Accordingly Cox cannot complain of the jury's finding against the counterclaim.

The judgment is affirmed.