RAMÓN FERRER DELGADO, Plaintiff and Appellant, *v.* GENERAL MOTORS CORPORATION, VAILLANT MOTORS CORPORATION, and CABRERA HERMANOS, INC., Defendants and Appellees.

No. R-70-34.      Decided November 22, 1971.

*Gilberto Padró Díaz* for appellant. *Rivera Zayas, Rivera Cestero & Rúa* and *Víctor R. González Mangual* for General Motors Corporation. *Hartzell, Fernández, Novas & Ydrach* and *A. Santiago Villalonga* for Vaillant Motors Corporation. *Joaquín Lago Padín* for Cabrera Hermanos, Inc.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellant, Ramón Ferrer Delgado, filed a complaint which he called "civil action" against General Motors Corporation, Vaillant Motors Corp., and Cabrera Hermanos, Inc., appellees in the instant case. The original complaint was filed on September 6, 1967. Plaintiff alleged that on October 26, 1965, he bought a new 1966 Oldsmobile automobile from Cabrera Hermanos, Inc., agents or representatives in Arecibo of Vaillant Motors Corp. and General Motors Corp.; that the purchase price was $9,365; that the automobile was sold to him with defects in the front end of the same, reason for which it wore out in an excessive manner the front tires on the inside to the point that after having run 22,000 miles, it had worn out 12 tires; and that the defendants have not been able to correct said defect. He requested the return of the price he

paid for the automobile and to be indemnified for damages. He placed the aforesaid vehicle at defendants' disposal.

The evidence presented at the trial showed that in effect the front tires of the vehicle had to be replaced after approximately every 5,000 miles run by the automobile; that on several occasions said vehicle was taken to the workshops of each one of appellees in order to have that situation corrected and on every occasion the appellees limited themselves to send the automobile to different workshops in order to have the front end aligned but none of them examined the vehicle in its own workshop in order to determine whether the vehicle had any defect which could cause the excessive tire wear. On every occasion the automobile was returned to appellant but the tires continued wearing out in the aforesaid manner.

Two of these tires were presented in evidence and examined by the parties' expert witnesses. The tread of each one of the tires was more worn out at the borders than at the center. The inner border of each tire was more worn out than the outside border. Appellant's expert, on the basis of the tire wear shown, concluded that the same was caused by some defect of the vehicle. He was of the opinion that the tire wear was not caused by low tire inflation, since the inner borders were more worn out than the outside borders.

Appellees' mechanical expert, who in turn is the Service Manager for General Motors, in turn, testified that the tire wear was caused by low inflation, since the tires were more worn out on the borders than in the center. It is evident that this witness disregarded the fact that the inner borders of the tires were more worn out than the outside borders. Plaintiff testified that he inflated the tires with the air pressure indicated by the seller Cabrera Hermanos. Appellees' expert pointed out that the outside of one of the tires had blows and signs of having hit a corner or curb and that this contributes to unbalance the front end of the vehicle. He pointed out that the driving habits may contribute to the tire wear. He did not

say anything—nor was he asked—in regard to whether the tire wear could have been caused or affected by some defect of the vehicle. He limited himself to set forth that there are many factors which may cause the tire wear.

The trial court dismissed the complaint on the ground of the following findings of fact and conclusions of law: None of the alignment workshops returned the vehicle stating that it could not be aligned due to defects in the front end. The tires presented in evidence were used with low pressure and they had hit obstacles such as curbs, thing which affects tire wear. It was not established that there was any defect whatsoever in the front end. In actions for damages on account of negligence it should be established that there was negligence; that the damage was caused by defendant's negligence or unskillfulness, and such causal connection was not established here nor was it established that defendants breached their contractual obligations, nor were there hidden or redhibitory defects established either.

The trial court committed error in the weighing of the evidence and in the application of the law to the facts of the case.

It is true that none of the workshops returned the vehicle unaligned, adducing that the same had some defects, but it is equally true that none of the workshops said that the automobile had *no* defects. The conclusion to the effect that the tire wear resulted from running the tires with low pressure is based on the testimony of appellees' expert witness, who disregarded the fact that the inner borders of the tires were more worn out than the outside borders. The opinion of appellant's expert in the sense that irregular wear out, in only one side of the tires, could not be caused by the tires low inflation seems more reasonable and persuasive to us. As to the driving habits as a causal factor of the tire wear, it is proper to point out that there was no affirmative evidence in such sense but that it was mentioned as a mere possibility. The fact that in

previous years appellant had bought from Cabrera Hermanos four Oldsmobile automobiles—since 1949—and said appellee presented no evidence that appellant had any similar problem of excessive and irregular tire wear in those other four vehicles is opposed against such possibility. It is unlikely that appellant started to acquire bad driving habits since he bought the vehicle object of this action.

The court also committed error in concluding that it was not established that the vehicle had any hidden or redhibitory defect or that appellees breached their contractual obligations. These conclusions would be correct if the traditional rules of burden of proof were applied to cases such as the instant case, and if the clauses of the contract of sale concerning the warranty, in case of doubt, were construed in favor of the party who wrote it.

It is true that appellant did not establish which part or parts were defective or improperly adjusted or which parts caused the excessive tire wear. Generally speaking, the purchaser of a vehicle is not an expert in automobile mechanics, but on the contrary the ones who manufacture the vehicle and their agents are the ones who are and should be. It is true that the appellees took pains to correct the situation but that is not enough. Besides the provisions in the law for cases involving sales—thing which we shall mention hereinafter—in the instant case there is a written warranty of the manufacturer of the vehicle which is part of the contract of sale of a new automobile. Said warranty is identical or similar in every contract of sale of new vehicles and the same has been the object of interpretation in innumerable cases.

The warranty issued by the manufacturer of the vehicle involved herein states, insofar as pertinent, that the Oldsmobile Division of General Motors Corporation, as manufacturer, warrants that each new vehicle, including all equipment and accessories, except the tires, manufactured or supplied by the Oldsmobile Division and sold by an authorized

Oldsmobile dealer is free from defects in material and workmanship. The warranty, of course, is demandable whenever the vehicle is submitted to normal use. ("Free from defects in material and workmanship under normal use and service.") Further on said warranty sets forth that the same is limited to repairing or replacing the defective parts. The other provisions of the warranty are not pertinent herein.

The construction which many courts have given to said clauses and which in our opinion constitutes the most reasonable and fair interpretation is the one set forth in the leading case of *Allen* v. *Brown*, 310 P.2d 923 (1957), cited with approval in *Rose* v. *Chrysler Motors Corporation*, 212 Cal. App. 2d 755; 99 A.L.R.2d 1411, 1418 (1963).

The reasoning of the court in said case of *Allen* v. *Brown*, may be summarized as follows:

As is often the case in the purchase of a new automobile, the purchaser, on discovering a defect in the same, returns the vehicle to the dealer from whom the purchase was made. Usually the cause of the defect is unknown to the purchaser and it is upon the dealer and his mechanics that he relies for the discovery and correction of said defect. The dealer, if necessary, will consult the factory experts.

It would place a tremendous burden upon the purchaser, who is generally a layman concerning mechanics, to have him find the precise part or parts of the vehicle which are defective or which cause the problem. It is incumbent upon the dealer to find the cause of the problem and to replace the defective part or parts free of cost pursuant to the warranty. If the vehicle is not repaired within a reasonable period of time the warranty becomes effective.

In a similar sense see *Fox* v. *R. D. McKay Motor Co.*, 366 P.2d 297; *General Motors Corp.* v. *Earnest*, 184 So.2d 811; *Cox Motor Car Co.* v. *Castle*, 402 S.W.2d 429. See also: *Construction and Effect of Standard New Motor Vehicle Warranty*, 99 A.L.R. 1419; *Strict Products Liability and the Automobile Industry: Much Ado About Nothing*, 1968 Wisc.

L. Rev. 83; *Defective Automobiles and the N.C.C.*, 18 Clev. St. L. Rev. 527.

■ In synthesis, in cases such as the instant case, the purchaser is only bound to establish, as it was established by plaintiff herein, that the vehicle which he bought does not work properly and that the defendant had the opportunity of correcting the defect but it did not correct or could not correct it. Defendant is exempt from liability if as an affirmative defense it shows—what it did not do here—that the abnormal performance is caused by the plaintiff's acts. These conclusions agree with the decision in *Negrón* v. *Caribe Motors*, judgment of June 15, 1970, Advanced Sheet Bar Asso. 1970-98.

■ Let us see now which is the applicable law to these cases in which automobiles and other devices and machines sold turn out to be defective. This involves contracts of sale of personal property. Then, the sections of the Civil Code which regulate the sale of personal property, which are in Title IV of Book IV of the Civil Code, §§ 1334 to 1427, and which regulate sales in general are applicable thereto in a general manner. 31 L.P.R.A. §§ 3741–3961. Since we are dealing in particular with a case involving the warranty against hidden defects in the thing sold, §§ 1350, 1363, and 1373 to 1375, inclusive, of the Civil Code are especially applicable. 31 L.P.R.A. §§ 3801, 3831, and 3841–3843. *Berríos* v. *Courtesy Motors of P.R., Inc.*, 91 P.R.R 428, 431 *in fine* (1964).

The sale—the change of something for money—is the most frequent and representative of the onerous contracts conveying ownership. It is the most carefully regulated by the Code.[1]

---

[1] The importance of the sale of personal property is such in the modern private law that it has extended from the national ambits to the international field. Therefore, the convenience of an international unification of the law applicable to said contract has arisen. The International Institute for the Unification of Private Law, of Rome, started the editing work of a Uniform Act about this particular, works which crystallized

■ By virtue of § 1350 the vendor is bound to deliver and warrant the thing sold. 31 L.P.R.A. § 3801. It is not sufficient that the vendor deliver the thing; it is necessary that he warrants to the vendee the peaceful and useful possession of the same. The purpose or cause of the sale for the vendee is to acquire the thing in order to make use of the same and said purpose would not be accomplished if once the delivery is made the vendee is deprived of the thing or it is impossible for him to apply it to the uses proper of the same. Hence the vendor's obligation to give a warranty. The Code calls *warranty* (§ 1350) to that which in foreign law and in the doctrine is called *surety*. The two traditional forms of said warranty consist in warranting the peaceful possession of the thing sold and in the obligation to give a warranty against the hidden faults or defects it may have.

■ As it is known, the obligation to give a warranty exists in cases of eviction and in cases of hidden defects. Eviction (from the latin *evincere*) means to defeat at a trial and it means, in this context, the loss of a right as a consequence of a judicial judgment. The eviction, which is a fact, produces, in sale matters, the juridical effect of the warranty obligation. Since the instant case is not a case of warranty against eviction, but of warranty against hidden defects, it is not necessary to enter into other details about that juridical institution.

■ As we said, the other obligation to give warranty appears when there are hidden faults or defects in the thing sold. These defects may be *juridical*, in which case they would consist of a limitation in the right conveyed (as for example, an undisclosed servitude in the case of real property) or they can be of *fact*, as when inherent defects in the thing sold are

in the Uniform Act of 1956, submitted to the consideration of the governments of different countries. 4 Castán, *Derecho Civil Español, Común y Foral* 57, 9th rev. ed. (1969).

involved. Hidden defects are also called *redhibitory* (from *redhibere*, to return) because they may annul the sale.

The doctrine proclaims that in order to be subject to warranty the hidden defects (1) should be unknown to the vendee, (2) the defect should be serious or very important for it to render the thing unfit for the use to which it was destined or which diminishes said use in such manner that had the vendee had knowledge thereof he would not have acquired it or would have given a lower price for it, (3) that it is pre-existent to the sale and (4) that the action be brought in the legal period, which is of six months counted from the delivery of the thing sold. Section 1379 of the Civil Code. 31 L.P.R.A. § 3847. In Puerto Rico, as well as in Spain, said period has been legally extended in the sense that the six-month period is counted, not from the date the contract was perfected, but from the day the steps to come to an understanding following the contract were interrupted. *Casa Jaime Corp.* v. *Castro*, 89 P.R.R. 686, 688 (1963).

In cases such as the case at bar, of warranty against hidden faults or defects, the Code provides that the vendee may choose between withdrawing from the contract, the expenses which he may have incurred being returned to him, or demanding a proportional reduction of the price, according to the judgment of experts. Section 1375. 31 L.P.R.A. § 3843. Said section also provides that if the vendor knew of the faults or hidden defects in the thing sold and did not give notice thereof to the vendee, the latter shall have the same option, and, furthermore, be idemnified for the losses and damages should he choose the rescission. In the case at bar it was not alleged or established that the vendor knew of the hidden faults or defects.

According to the foregoing, appellant is entitled to be reimbursed the price paid for the automobile and the expenses which he necessarily incurred as a result of the faults or de-

fects of the same (the $450 he spent buying additional tires), but he is not entitled to the $15,000 he claims for damages. He is also entitled to be reimbursed the costs and a reasonable sum for attorney's fees. We decide that the extraordinary expenses for tires are included in the concept of "expenses" of the aforecited § 1375 but, of course, not thus what he claims for damages. The damages would lie only, as we have set forth before, if the vendor had been aware of the hidden faults and had not given notice to the vendee.[2]

■ Appellant's action has not prescribed since at the time it was filed not more than six months had elapsed since the steps to come to an understanding between the parties were interrupted. *Casa Jaime Corp.* v. *Castro, supra,* and besides the warranty contract issued by the manufacturer had not expired when the action was filed.

■ The following should be remembered about these printed contracts and warranty which are delivered to the purchaser of an automobile or a machine: Although it is true that the Civil Code is supplementary to what has been agreed upon by the parties, provided that they do not make a contract in violation of the law, when construing and applying said contracts and their warranties we shall take into consideration that those are adhesion contracts, in which the vendee has very little or nothing to say. His consent to them, once the decision to buy a certain make and model of the automobile or of the machine concerned is made, is almost none. See *Rosario* v. *Atl. Southern Ins. Co. of P.R.,* 95 P.R.R. 742, 748 (1968); *Protane Gas Co. of P.R.* v. *Ramos,* 95 P.R.R. 408, 409 (1967); *Barreras* v. *Santana,* 87 P.R.R. 215, 219 (1963); *Zequeira* v. *U.R.H.C.,* 83 P.R.R. 847, 849–850 (1961); *Maryland Cas. Co.* v. *San Juan Racing Ass'n, Inc.,* 83 P.R.R. 538, 544 (1961).

---

[2] In *Fuentes* v. *Hull Dobbs Co.,* 88 P.R.R. 544 (1963), the vendor was aware of the hidden fault and there we granted damages.

■ Which of the appellees should be liable to the appellant in the instant case? The general rule is that the vendor should reimburse the price. But the action also lies against the manufacturer, by virtue of the aforementioned express warranty. See *Product Defect-Privity*, 16 A.L.R.3d 683; *Standard New Motor Vehicle Warranty*, 99 A.L.R.2d 1419. If in our jurisdiction an action for damages against the manufacturer of a defective product which causes damages is admitted, *Mendoza* v. *Cervecería Corona, Inc.*, 97 P.R.R. 487 (1969), with greater reason an action against the manufacturer of an automobile to obtain the reimbursement of the price paid should prosper.

■ Besides the vendor and the manufacturer, the dealer in Puerto Rico of the Oldsmobile automobile, Vaillant Motors Corporation, was sued. The latter was mediator between General Motors Corp. and Cabrera Hermanos, Inc., in the introduction into Puerto Rico of the vehicle sold to appellant. Under similar circumstances in *Barth* v. *B. F. Goodrich Tire Company*, 71 Cal. Rptr. 306 (1968), the mediator or wholesaler was found liable for defects of a tire. Although that case is predicated on the doctrine of strict liability, for there were damages when the tire blew out, a similar view should be applied when, as in the case at bar, a mediator introduces a defective product which he cannot repair. The three appellees are solidarily liable before appellant.

Since Vaillant Motors Corp. and Cabrera Hermanos, Inc., filed separate cross-complaints against General Motors Corp. or its subsidiary Foreign Distributors Division of General Motors Corp. or Overseas Division of General Motors and General Motors Corp. or its subsidiary filed separate counterclaims against Vaillant Motors Corp. and against Cabrera Hermanos, Inc., and the trial court did not make findings of fact nor conclusions of law in regard to said cross-complaints and said counterclaims, we have no elements of judgment to distribute the sum of the judgment between the different

appellees. The defendant-appellees may agree among themselves, or elucidate in a separate suit, who will pay what to whom, among themselves. The liability which we fix here towards the plaintiff-appellant is solidary against the three defendants and the former may render it effective without waiting for the defendants to reach an agreement among themselves or to take the matter to litigation.

The judgment rendered in this case by the Superior Court, San Juan Part, on January 2, 1970, will be reversed, the complaint will be sustained, and judgment will be rendered consistent with the foregoing. ■

Mr. Chief Justice Negrón Fernández did not participate in the decision of this case.