NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000729
27-FEB-2026
07:58 AM
Dkt. 77 MO**

NO. CAAP-23-0000729

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


VALLEY ISLE MOTORS, LTD.,
Plaintiff/Counterclaim Defendant-Appellant,
v.
P. DENISE LA COSTA, Defendant/Counterclaimant-Appellee


APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(CASE NO. 2DRC-22-0000216)


**MEMORANDUM OPINION**
(By: Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

**Valley Isle** Motors, Ltd. appeals from the *Judgment* for
P. Denise **La Costa** entered by the District Court of the Second
Circuit, Wailuku Division, after a bench trial.[1]  We vacate the
Judgment and remand for entry of an amended judgment.


**BACKGROUND**

Valley Isle sued La Costa for $7,567.20.  The amended
complaint alleged that La Costa "had service work performed at
her request by Valley Isle Motors which work was approved by her
insurer **State Farm** which issued checks for the approved work.
[La Costa] caused payment to be stopped on the State Farm
checks."

---

[1]     The Honorable Lance D. Collins presided.

La Costa counterclaimed for a "minimum of $21,000 for [d]amages to [her] vehicle while in the care and custody of [Valley Isle], and failure by [Valley Isle] to properly repair [her] vehicle."

After a three-day bench trial, the District Court entered findings of fact, conclusions of law, and a decision and order. The Judgment for La Costa, for $10,325.05 plus $2,581.26 in attorney fees, was entered on November 20, 2023. This appeal followed.

## POINTS OF ERROR

Valley Isle contends the trial court erred by **(1)** denying its claim for the cost of repairing the sunroof of La Costa's car, **(2)** allowing La Costa to call "a previously undisclosed 'rebuttal' witness to testify as an expert"; **(3)** ruling that the sunroof repair was covered under the manufacturer's warranty; **(4)** awarding damages for the center instrument panel; and **(5)** awarding attorney fees. It challenges findings of fact [**FOF**] nos. 2-9, 13-15, and 19, and conclusions of law [**COL**] nos. 1-9.

## STANDARDS OF REVIEW

We review findings of fact under the *clearly erroneous* standard. Cowan v. Exclusive Resorts PBL1, LLC, 156 Hawaiʻi 268, 272, 574 P.3d 288, 292 (2025). A finding of fact is clearly erroneous if the record lacks "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion[,]" or if we are "left with a definite and firm conviction that a mistake has been made." Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).

2

Conclusions of law are not binding on an appellate court, and are reviewed *de novo*. Cowan, 156 Hawaiʻi at 272, 574 P.3d at 292. But a conclusion presenting mixed questions of fact and law is reviewed under the *clearly erroneous* standard because it implicates the facts and circumstances of that case. Id.

We review an order granting or denying attorney fees for *abuse of discretion*. Cowan, 156 Hawaiʻi at 272, 574 P.3d at 292. A court abuses its discretion if it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. Id.

## DISCUSSION

The trial evidence showed that La Costa bought a Lincoln from Jim Falk Valley Isle Motors on March 11, 2019. It was in an accident on September 13, 2019. La Costa took it to **Precision** Auto Body. **[Id.]** The damage was repaired and La Costa picked the Lincoln up the Wednesday before Thanksgiving. As she was driving home, she noticed the instrument panel lights were out. She took the Lincoln back to Precision, but was told "this isn't what we can fix." She had the Lincoln towed to Valley Isle on December 4, 2019.

La Costa testified that Valley Isle "had my vehicle for three and a half months, and the issue was not fixed by them." La Costa then had the Lincoln towed to **Studio** Auto Body. She testified, "it was returned to me fixed." State Farm paid Studio $6,358.08.

La Costa picked the Lincoln up from Studio on April 22, 2020. She tried to open the sunroof while she was driving, but it wouldn't open. She took the Lincoln to Valley Isle on May 5, 2020. She reported the sunroof wasn't working. It turned out the sunroof wasn't working because rodents had damaged wires in the passenger-side A-pillar. Valley Isle completed the repair.

State Farm paid Valley Isle with two checks, but payment was stopped.

### 1. Valley Isle proved its claim for the cost of repairing the Lincoln's sunroof.

To prove its claim in the nature of assumpsit, Valley Isle had to show (a) an agreement; (b) performance by Valley Isle; (c) breach by La Costa; and (d) damages. Cf. Adelman v. Steely, No. CAAP-18-0000149, 2024 WL 621694, *2 (Haw. App. Feb. 14, 2024) (SDO).

Valley Isle challenges FOF nos. 4-7 and 13-15:

> 4. During the specific term of the limited warranty, the Lincoln suffered a malfunctioning moonroof[2] rendering [the moonroof] inoperable.
>
> 5. [La Costa] gave timely notice of the malfunctioning moonroof.
>
> 6. [Valley Isle] repaired the moonroof over a period of three months.
>
> 7. [Valley Isle] determined that a rodent infestation had occurred in the Lincoln.
>
> . . . .
>
> 13. [La Costa] made a claim against her comprehensive vehicle insurance policy to cover the cost of the repairs.
>
> 14. [La Costa]'s insurance carrier delivered to [Valley Isle] two checks payable to the order of [Valley Isle] in the amount of $7,567.20 which were subsequently subject to a stop-payment order.
>
> 15. [Valley Isle] made demand on [La Costa] for payment of the repairs.

FOF nos. 4-7 and 13-15 are supported by substantial evidence and were not clearly erroneous.

Valley Isle presented evidence that La Costa asked it to repair her Lincoln's sunroof. The trial court correctly found

---

2 The parties use the terms *sunroof* and *moonroof* interchangeably.

that Valley Isle repaired the sunroof.  The trial court found that La Costa refused to pay for the repair.  La Costa did not challenge the reasonableness of Valley Isle's $7,567.20 repair bill.  Valley Isle proved its assumpsit claim.

**2.    Valley Isle's point about the trial court allowing La Costa's proffered expert witness to testify is moot.**

Valley Isle contends the trial court erred by allowing La Costa to call Bruce **Burger**, an undisclosed witness, to testify as an expert.  Burger was not identified on La Costa's trial witness list.  La Costa's answering brief presents no argument, conceding the error.  But the trial court's error was harmless, and Valley Isle's point is moot.

Burger conceded the Lincoln's sunroof was "the most complicated one that I've looked at. . . . [I]t's got the most apparatus, the most buttons, *and the most functions*" (emphasis added).  He believed there was a problem with the Lincoln's sunroof.  He testified:

> the moonroof would remain stationary the entire time that I sat parked in the car, but once I went out driving, it remained stationary up until the point in time, like -- and, again, I don't know exactly how long it took to begin starting its movement, but after about 20 minutes, when I looked up and observed, it had indeed moved a substantial amount forward.

Richard **Busta**, Valley Isle's shop foreman and lead senior master Ford technician, was asked whether the sunroof can close on its own while the Lincoln was being driven.  Busta explained:

> It is designed to actually close approximately 8 inches at 15 miles an hour, and that's to reduce the wind noise and buffeting within the vehicle.  That's a design of the system.
>
> . . . .
>
> That is a design.  In fact, it's actually even stated in the owner's manual.

5

Burger was successfully impeached. The trial court's error in allowing an undisclosed witness to testify was harmless because the court found that Valley Isle "repaired the moonroof[.]" Valley Isle's point of error is moot.

**3. The trial court clearly erred by finding and concluding the sunroof repair was covered under the manufacturer's warranty.**

Valley Isle challenges FOF no. 2:

2. Part of the sale of the Lincoln included a written, express limited warranty for a specific term and was a basis of the bargain.

FOF no. 2 is not clearly erroneous. The Lincoln Motor Company **Warranty Guide** was in evidence as La Costa's Exhibit B.

Valley Isle challenges FOF no. 3:

3. Relevant portions of the limited warranty were:

"the authorized dealer will, without charge, repair, replace or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period *due to a manufacturing defect in factory-supplied materials or factory workmanship*." Def. Exh. B at 11

"SYNC Hands-Free Communication and Entertainment System" Def. Exh. B at 16

"Other Items or Conditions Not Covered" Def. Exh. B at 17

"Ford and your dealer are not responsible for any time or income that you lose, any inconvenience you might be caused, the loss of your transportation or use of your vehicle, the cost of rental vehicles, fuel, telephone, travel, meals or lodging, the loss of personal or commercial property, the loss of revenue, or for any other incidental or consequential damages you may have." Def. Exh. B at 7

(Emphasis added.)

FOF no. 3 is incomplete. The Warranty Guide also describes what the warranty covers in more detail:

Under your New Vehicle Limited Warranty if:

- your Lincoln vehicle is properly operated and maintained, and

- was taken to an authorized dealership for a warranted repair during the warranty period,

then the authorized dealer will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period **due to a manufacturing defect** in factory-supplied materials or factory workmanship.

This warranty does not mean that each Lincoln vehicle is defect free. Defects may be unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs. Ford provides the New Vehicle Limited Warranty only to remedy **manufacturing defects that result in vehicle part malfunction or failure** during the warranty period.

The remedy under this written warranty, and any implied warranty, is limited to repair, replacement, or adjustment of **defective parts**. This exclusive remedy shall not be deemed to have failed its essential purpose so long as Ford, through its authorized dealers, is willing and able to repair, replace, or adjust **defective parts** in the prescribed manner. Ford's liability, if any, shall in no event exceed the cost of correcting **manufacturing defects** as herein provided and upon expiration of this warranty, any such liability shall terminate.

(Emphasis added.)

Valley Isle challenges FOF nos. 8 and 9:

8.     Based upon the rodent infestation determination, [Valley Isle] deemed the malfunctioning moonroof to be **excluded** from the limited warranty coverage.

9.     No credible evidence was presented that any serious investigation or testing was performed to conclude that the rodent infestation was the cause [of] the malfunction, just that the existence of a rodent infestation **excluded** the malfunctioning moonroof from coverage of the warranty.

(Emphasis added.)

FOF no. 8 is clearly erroneous. La Costa points to no evidence showing she made a warranty claim with Valley Isle. The evidence was that Valley Isle billed State Farm, State Farm paid

Valley Isle, but payment was stopped after La Costa asked State Farm to stop payment. La Costa points to no evidence showing Valley Isle denied a warranty claim because rodents infested the Lincoln.

FOF no. 9 is clearly erroneous. Busta opened La Costa's May 5, 2020 repair order "for a sunroof being inoperative." He testified in detail about the testing he performed.

Valley Isle service technician Craig **Farr** also testified in detail about the testing and repair he performed. He ultimately detected a problem "at the right-hand A-pillar, which is the pillar that runs up along the side of the windshield in the front door." He "took the -- the trim panel off and [he] saw the chewed wires[.]" "[I]t was two or three wires that were chewed by a rodent that were creating -- or creating the concern where the window wasn't operating properly." "The wiring in the A-pillar was repaired. The sunroof initial -- the sunroof and the sunshade initialized as they were supposed to and was working as it was designed."

FOF no. 9 refers to "[n]o credible evidence" being presented. An appellate court will ordinarily not pass upon issues dependent upon credibility of witnesses. Cowan, 156 Hawaiʻi at 272, 574 P.3d 292. But here, Busta's and Farr's testimony was corroborated by Valley Isle's 24-page Repair Order (Valley Isle Exhibit 1) and six pages of diagnostic communication between Valley Isle's technicians and Ford (Valley Isle Exhibit 2). La Costa presented no evidence to show there was another cause for the sunroof being inoperable. Under these circumstances, we are "left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Cowan, 156 Hawaiʻi at 272, 574 P.3d at 292.

FOF no. 9 also contained the clearly erroneous finding that Valley Isle told La Costa "the existence of a rodent

8

infestation *excluded* the malfunctioning moonroof from coverage of [sic] the warranty." (Emphasis added.) Again, La Costa points to no evidence showing Valley Isle denied a warranty claim because rodents infesting the Lincoln was excluded.

The conclusion about the exclusion was a mixed finding and conclusion because the trial court had to apply the evidence to the Warranty Guide. "The construction and legal effect to be given a contract is a question of law[.]" Cowan, 156 Hawaiʻi at 273 n.3, 574 P.3d at 293 n.3.

The uncontroverted evidence showed the sunroof didn't work because rodents had chewed the wiring. As a matter of law, the warranty did not apply to the repair work because rodents chewing on wiring is not a manufacturing defect, nor does it make the wires (a part) defective. The warranty exclusions were never implicated because the warranty didn't apply. Cf. Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 210, 684 P.2d 960, 965 (1984) (stating "the basic principle that exclusion clauses *subtract* from coverage rather than grant it").

Valley Isle challenges COL nos. 1-9. All pertain to the warranty issue. Some are actually mixed findings and conclusions. They were wrong, clearly erroneous, or inapposite, for the reasons explained above.

The trial court cited Ford Motor Company v. Gunn, 181 S.E.2d 694 (Ga. App. 1971). There, the Georgia court of appeals did not have to decide whether the defect (abnormal vibration in steering wheel, seats, and body of Gunn's car) was covered by, or excluded from, Ford's new vehicle warranty.

The trial court cited the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. La Costa's counterclaim did not state a claim for damages under 15 U.S.C. § 2310(d).

The trial court cited Rose v. Chrysler Motors Corporation, 28 Cal. Rptr. 185 (Cal. App. 1963). There, Rose bought a Plymouth. "From the beginning, it was apparent that its

9

wiring system was defective." Id. at 186. Two months later, the instrument panel burst into flames and the car was severely damaged. The dealership claimed it only had to repair or replace the wiring, not any other fire-damaged part of the car. The California court of appeals ruled that "the responsibility of the warrantors extends to making all necessary adjustments and replacing all parts which are required because of defective workmanship or materials existing in the vehicle considered as a whole and without regard to whether or not an individual part was originally defective, *per se*." Id. at 188. The decision, aside from not binding us, does not apply here. After Valley Isle replaced the rodent-chewed wiring, the sunroof worked as designed.

The trial court cited Cox Motor Car Company v. Castle, 402 S.W.2d 429 (Ky. 1966). There, Castle bought a new truck from Cox. Within a month, the truck developed "a serious vibration or shimmy." Id. at 430. Cox told Castle "it was just the nature of the truck." Id. It contended there was no breach of warranty, and "the duty was on the buyer to point out what parts were defective and to ask replacement of those specifically." Id. at 431. The Kentucky court held "that the duty was on the seller, upon complaint being made of unsatisfactory operation of the truck, to make an examination designed to disclose the cause." Id. Here, after La Costa told Valley Isle her Lincoln's sunroof didn't work, Valley Isle examined it, found the cause, and fixed it.

The trial court clearly erred by finding and concluding the sunroof repair was covered under the manufacturer's warranty.

> **4. The trial court erred by awarding damages for replacing the instrument panel.**

This point pertains to La Costa's counterclaim. The trial court awarded La Costa damages for having to replace the Lincoln's center instrument panel.

La Costa's answering brief concedes that her witness, Rick Grant, "confirmed damages of $23,436.84, less approximately $5,030 for replacing an instrument panel that should not have been included in the invoice." But she argues: "Despite [Valley Isle]'s argument, there is no evidence that the trial court included the $5,030 amount for the instrument panel in its award." That is correct; the trial court instead awarded $3,124.79 for "Center instrument panel." The award consisted of $1,909.28 plus a forty percent mark-up for parts, and 7.6 hours of labor at $60.00 per hour. The judgment for La Costa should have been reduced by $3,124.79.

### 5.   The trial court acted outside its discretion by awarding La Costa attorney fees.

The trial court's decision and order stated:

> 2.   [La Costa] is the prevailing party and attorneys' fees "not [to] exceed twenty-five per cent" of the amount awarded [($10,325.05)] shall be taxed to [Valley Isle]. [Hawaii Revised Statutes §] 607-14[.]

La Costa's attorney submitted a declaration, as ordered by the trial court, showing the time he spent on the case, his hourly rate, and the total fees including Hawaiʻi general excise tax. The amount exceeded twenty-five percent of the judgment, so the trial court awarded $2,581.26 under Hawaii Revised Statutes (**HRS**) § 607-14.

La Costa's counterclaim alleged "[d]amages to [her] vehicle while in the care and custody of [Valley Isle], and failure by [Valley Isle] to properly repair [her] vehicle." The former sounded in tort, the latter in assumpsit.

We have reduced La Costa's tort recovery by $3,124.79, but she prevailed on the claim. She is responsible for paying her attorney's fees under the American Rule, because no fee award is authorized by statute, stipulation, or agreement. Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 31, 79 P.3d 119, 124 (2003).

11

La Costa did not prevail on her assumpsit claim. The trial court correctly found that Valley Isle repaired the sunroof. The trial court's ruling against Valley Isle was based on its clearly erroneous mixed finding and conclusion that the sunroof repair was covered under the Warranty Guide.

The trial court acted outside its discretion by awarding La Costa attorney fees.

## CONCLUSION

We vacate the Judgment and remand for further proceedings.

On remand, the District Court should enter an amended judgment for (1) $7,567.20 for Valley Isle and against La Costa on the amended complaint; and (2) $7,200.26 for La Costa and against Valley Isle on the counterclaim. The District Court should allow Valley Isle to move for an award of attorney fees under HRS § 607-14 as the prevailing party on its claim in the nature of assumpsit.

DATED: Honolulu, Hawaiʻi, February 27, 2026.

On the briefs:

Scott W. O'Neill,
for Plaintiff/Counterclaim
Defendant-Appellant
Valley Isle Motors, Ltd.

Jack R. Naiditch,
for Defendant/
Counterclaimant-Appellee
P. Denise La Costa.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge