This is a suit upon a manufacturer's written warranty for defects in an automobile. The suit was filed and tried in the Circuit Court of Covington County, Mississippi. The dispute arose under the following circumstances.
On January 31, 1967, appellee, Ray Olive, purchased from the defendant below, Buffington Ford Company, Inc., a 1967 Thunderbird eight-cylinder automobile, which had been manufactured by appellant, Ford Motor Company. Appellee paid Buffington Ford Company, Inc., $6,200, of which $500 was in cash, $1,000 was credited for the trade-in of appellee's old automobile, and the balance, $4,700, was financed by the Ford Motor Credit Company in Hattiesburg, Mississippi.
This automobile had been used as a dealer demonstrator beginning November 10, 1966. Although the car had been used for about eighty days as a dealer's demonstrator, appellant, Ford Motor Company, gave appellee, the purchaser, its standard new car express warranty, the terms of which were as follows:
 "There is no warranty, express or implied, made by either the Ford Motor Company or the selling dealer on new Ford vehicles, except the following direct company vehicle warranty:
 "THIS IS YOUR U.S. NEW CAR WARRANTY.
 "Ford Motor Company warrants to the owner, each part of this Ford vehicle to be free under normal use and service from defects in material and workmanship for a period of twenty-four (24) months from the date of delivery to the original retail purchaser or until it has been driven for 24,000 miles, whichever comes first. This warranty shall be fulfilled by the selling dealer * * * replacing or repairing at his place of business, free of charge, including related labor, any such defective part.
 "This warranty is expressly IN LIEU of any other implied warranty, including any IMPLIED WARRANTY of MERCHANTABILITY or FITNESS and of any other obligation on the part of the Company or the selling dealer."
Subsequent to appellee's purchase of this automobile, the appellee on at least nine occasions, the last of which was July 17, 1967, returned his automobile to various Ford dealers with different complaints concerning its performance. By appellee's own admission, Ford Motor Company, through its various dealers to whom the automobile had been brought, replaced or repaired every single part of which appellee complained.
Appellee had driven the car more than 24,000 miles within six months of its purchase. He defaulted in his financing payments and the automobile was delivered to the seller on or about September 29, 1967.
Appellee subsequently sued appellant and Buffington Ford Company, Inc. The trial was had exclusively upon the question of breach of the hereinabove related express warranty and the circuit judge granted a directed verdict for the defendant, Buffington Ford Company, Inc. However, the court permitted the question of liability of appellant to be determined by the jury. The jury returned a verdict for appellee against appellant in the amount of $3,000; whereupon the trial judge ordered a new trial on the question of damages only, subject to appellee's acceptance of an $800 remittitur. Appellee, plaintiff in the lower court, accepted the remittitur and the trial judge accordingly entered judgment against appellant, Ford Motor Company, in the amount of $2,200.
On appeal, appellant, Ford Motor Company, contends that it fully complied with its express warranty and that appellee was not damaged by the appellant.
There are two issues to be determined by this Court in this case. (1) Did the express warranty given to the purchaser of *Page 912 
the automobile warrant only each part of the vehicle found to be defective and not the vehicle as a whole? Did the express warranty given to the purchaser of the automobile warrant the entire automobile or only such parts as are found to be defective? (2) In the event there was a breach of the manufacturer's express warranty in this case, how were the purchaser's damages to be determined?
The appellant, Ford Motor Company, contends that there was no breach of its warranty because, it is said, it furnished the parts and paid for the installation of each part found to be defective and reported to it.
The record in this case reveals an amazing statement of facts. The appellant, Ford Motor Company, sets out a list of twenty-eight (28) repairs required because of defective material or workmanship, including replacement of motor and transmission. If the appellee is to be believed (the jury did), the automobile practically came apart, apparently nothing worked, and, as one defect was remedied, a new defect became evident. It became necessary to tow the automobile to the repair garage on several occasions. The automobile was in the garage seventy-eight (78) days and was "down" approximately forty-five (45) to fifty (50) days during the period from January 31, 1967, to May 17, 1967. Nevertheless, the appellee drove the automobile more than 24,000 miles within six months after its purchase. There was evidence that the appellant had a "hitch" on the automobile and that he usually pulled horse trailers. This was denied.
The appellant contends that since it had replaced each defective part and paid for the installation of the parts, it had done all that its warranty required. On the other hand, the appellee contends that the defective parts were so numerous that the entire automobile was a "piece of junk," and that he was entitled to recover in damages the difference between the value of the automobile on the date of its purchase and the value of the automobile on the date it was returned to the seller, less the value of the use occasioned by ordinary wear and tear.
The appellant cites Stribling Brothers Machinery Company v. Girod Company, 239 Miss. 488, 124 So.2d 289 (1960), wherein this Court held:
 "This customer's order expressly provided that the seller, Stribling Machinery, should not be held liable or responsible for any implied warranty. Seller's liability was limited to the specified warranty. In effect, it was the same as that of the manufacturer: To furnish such parts as appear to it to have been defective in material or workmanship, under normal use and service, after the seller or the manufacturer has determined the set was defective. This express warranty contains no assurance that the electric set was suitable for the purposes for which Girod purchased it. The seller's liability was expressly limited to the stated warranty, negativing any other.
 "It is well established that an express warranty of this type excludes the idea of an implied warranty. Where the parties have deliberately contracted in writing, a clause negativing an implied warranty limits the entire agreement to the writing. 46 Am.Jur., Sales, Secs. 333-335, 354. An express warranty excludes the implication of any warranty inconsistent with it. 77 C.J.S. Sales § 316. This is particularly true where the instrument, as here, expressly excludes an implied covenant. * * *" (239 Miss. at 496, 124 So.2d at 292)
This issue has been presented to other courts who have reached the conclusion that under similar express warranties the responsibility of the warrantor extends to making all necessary adjustments and replacing all parts which are required because of defective workmanship or materials existing in the vehicle considered as a whole. Cox Motor Car Company v. Castle, Ky.,402 S.W.2d 429 (1966); Seely v. White Motor Company, 63 Cal.2d 9,45 Cal.Rptr. 17, 403 P.2d 145 (1965); Rose v. *Page 913 
Chrysler Motors Corporation et al., 212 Cal.App.2d 755,28 Cal.Rptr. 185, 99 A.L.R.2d 1411 (1963).
In the instant case we have reached the conclusion that the warranty here involved does, in fact, warrant each and every part of manufacturer's automobile under "normal use" from "defects in material and workmanship" for the period or distance therein named. We also are of the opinion that the warranty not only warrants each separate part, but warrants all the parts as a whole. Of course, things that amount to the same thing are equal to each other. This rule is just as applicable to logic as it is to mathematics. Therefore, we must conclude that the warranty covers the automobile, with the exception of the parts expressly excluded such as "spark plugs," "wiper blades," etc.
On the other hand, the written warranty in the instant case provided the method by which the warranty was to be fulfilled; that is to say, the defective parts were to be "replaced or repaired" by "the selling dealer at his place of business." The parties are bound by their sales contract and the collateral warranty must be interpreted as written where the terms are clear and unambiguous. See: Industrial Finance Corporation v. Wheat,142 Miss. 536, 107 So. 382 (1926); 46 Am.Jur. Sales § 712 (1943).
The plaintiff testified that the Buffington Ford Company, Inc., through its agent, Scott Buffington, did all it could to repair the automobile; that it replaced the defective parts and did everything plaintiff requested it to do; that plaintiff's relations with Scott Buffington were very cordial. He said: "I have absolutely nothing against Scott Buffington."
The facts presented here are vastly different from the facts shown in the case of Morrow v. Barron Motor Company, 229 Miss. 51, 90 So.2d 20 (1956). In the Morrow case the facts were such that the jury could have reasonably found that the seller refused to repair the automobile in compliance with the manufacturer's warranty.
The burden of proof was upon the plaintiff to show that the warranty was not "fulfilled" by the "selling dealer" by its failure to replace or repair defective parts, unless it was shown that the article sold was incapable of being repaired. 46 Am. Jur. Sales § 309 (1943).
In the instant case the testimony shows that the plaintiff made no attempt to rescind the sales contract, although he returned the automobile to the dealer many times for repair. The dealer repaired the automobile and the manufacturer furnished the parts and paid for the cost of labor. The plaintiff continued to use the automobile until he had driven it 24,000 miles. He returned it then, only when it was being repossessed.
Although it may be true (which we do not here decide) that one may sue upon a contract for a breach of warranty without returning the article purchased, Morrow v. Barron Motor Company,229 Miss. 51, 90 So.2d 20 (1956); 46 Am.Jur. Sales § 720 (1943), it is certainly true that continued use of an automobile for a long period of time after it has been repaired in compliance with the manufacturer's warranty is sufficient to show that the repair was satisfactory to the purchaser.
We are of the opinion that the manufacturer complied with its warranty as shown by the facts in this case. Therefore, we hold that the trial court should have sustained the motion of Ford Motor Company to direct a verdict in its favor.
The judgment of the trial court is hereby reversed and judgment entered here in favor of Ford Motor Company.
Reversed and judgment for appellant.
GILLESPIE, P.J., and BRADY, SMITH and ROBERTSON, JJ., concur. *Page 914