**GOODWIN MADURO, Plaintiff**

v.

**FORD MOTOR COMPANY and RAMSEY MOTORS, INC.,**
**Defendants**

Civil No. 438-1970

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 22, 1974

CHRISTIAN, *Chief Judge*

OPINION

This is an appeal from a judgment of the municipal court, dismissing plaintiff's complaint.

On February 16, 1968, plaintiff purchased a new Mercury Montego from defendant Ramsey Motors, Inc., the authorized Ford dealer on St. Thomas. It was clearly understood by all concerned that plaintiff intended to use the vehicle as a taxi in St. Thomas. At the time of purchase, Mr. Ramsey, in the presence of the plaintiff, wrote by hand, on the sales slip, "6 months or 6000 miles, whichever comes first". The owner's manual, placed in the glove compartment, contained a standard new car warranty issued by Ford, limited to the repair or replacement of specified parts.

Commencing within days of this transaction and continuing over a period of several months, Mr. Maduro encountered numerous difficulties with the car's performance. The day after the car was purchased, plaintiff noticed that he kept running out of gas because the gas gauge wasn't functioning properly. About two weeks after this was repaired, a knock developed in the steering arm, which was also corrected upon request. Three months later, the alternator in the car burned up. Although that too was repaired, the car was in the garage the next day for the same problem. Within a matter of weeks, the car spent six days in the garage while the brakes were being repaired. Not long after, a faulty oil seal caused oil to leak onto the brake band. The next problem, occurring about five months after purchase, entailed engine and ignition trouble. Mr. Maduro described the car as sometimes running long after the ignition had been turned off, as well as suddenly stalling in the middle of operation, conditions which, according to the plaintiff, have not been corrected. Finally, the transmission started slipping. Although Maduro asserts that a Ramsey mechanic "tightened the bands", he maintains that the problem continued. Moreover, the car exuded an odor of fuel when the

403

engine became heated and would often slip into neutral. It was when this latter problem was reported to Ramsey that things became so strained between the parties that plaintiff abandoned his car.

Although Maduro is unable to state with any certainty on what dates he reported these myriad malfunctions to the dealer, work sheets were admitted in evidence dated February 12, 19, March 22, April 5, June 13, and November 11, all in 1968. The work indicated on this last date is the basis of this appeal. The parties differ over whether or not it was included in any warranty, and if so, whether the warranty period had, in fact, expired. The trial court found, as a matter of law, that even if repair of the transmission were to be included in an implied warranty of merchantability, no such warranty ever arose because Mr. Ramsey's express notation "6 months or 6000 miles" disclaimed the implied warranty by virtue of inconsistency. U.C.C. 2—316(3)(a).

Under our appropriate standard of review "findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the municipal court to judge the credibility of the witnesses". 4 V.I.C. § 33; Gordon v. Elskoe, 7 V.I. 144, 295 F.Supp. 909 (1969). However, testimony at trial was exceptionally brief and the greater part of the record consists of written documents such as depositions, stipulations and examination before trial. Legal authority apart, logic and sound principle would indicate that in such a case the trial court's determination of credibility is not likely to be any more incisive than that of the reviewing tribunal. The factual findings of the court below were (a) that the plaintiff had, in fact, purchased the automobile from the defendant, selecting the model himself; (b) that although defendant experienced problems and inconvenience due to the defective condition of the car, defendant Ramsey Motors substantially re-

404

·paired these conditions at no cost to the plaintiff;[1] (c) that the transmission trouble was not brought to the attention of defendant Ramsey until eight and one-half months after the car had been purchased, and after the car had been driven almost 11,000 miles; and (d) that the plaintiff had been advised, by oral, as well as by conspicuous written notice, of the limited warranty. It is with this last finding, as well as its resultant legal consequences, with which we are here primarily concerned.

Plaintiff contends that there is an implied warranty of merchantability which exists cotemporaneously with, and extends beyond the express warranty of 6 months or 6000 miles, whichever comes first, given by Ramsey on behalf of itself and Ford. It follows, if this argument is valid, that any such warranty is breached if the automobile is not "at least fit for the ordinary purposes" for which it is used, section 2—314(2)(c), no matter when the culminating disaster occurs. The municipal court deemed it unnecessary to address this issue, and based its decision on section 2—316 (3)(a), holding that by virtue of this section no implied warranty of merchantability ever arose. That section relates to the exclusion or modification of warranties, and provides in subsection (1) that "words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other". Moreover, section 2—317 states that "Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable . . . (c) express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose".

[1] Despite demand for payment on several occasions clearly within the six-month period, plaintiff refused on the ground that the car was clearly a "lemon" and that repair should be covered by the warranty. Much of the cost or repair was ultimately passed on to Ford by the dealer Ramsey.

■ Ramsey's express warranty, although plainly conspicuous, is too lacking in particularity to effectively disclaim or supersede the statutory warranty of merchantability. Two reasons prompt this conclusion: first, because it does not conform to section 2—316 by specifically disclaiming that warranty, and second, because it can reasonably be read as consistent, and therefore concomitant with the express warranty.

■■ The first reason raises a major factual issue, not touched on by the trial court, which is indispensable to the determination of this case. Section 2—316(3) requires the explicit use of the word merchantability in any effective disclaimer of that warranty. Although no mention of the term was made on the sales slip which contained the handwritten limitation, it does appear on the standard warranty ordinarily given to new car purchasers. The question of whether or not appellant received such an official warranty, and therefore must be held to have knowledge of its contents, is in sharp dispute, and no finding as to it was made below. If answered in the affirmative, that would effectively determine the controversy since the warranty would have been clearly disclaimed and the 6 months term would stand as plaintiff's sole protection. In a deposition taken before trial, plaintiff strenuously denies ever having received such a document. Defendant Ramsey, while asserting that it is common practice at his place of business to have the accountant give one to the purchaser when concluding a sale, conceded that he had no personal knowledge whether that practice was followed in the instant case. The disposition of this question is crucial to determination of the case in that if such standard warranty were received in hand, plaintiff is confined to the handwritten note, in which case, as the trial court stated, "if anything major were to go wrong with the car the buyer could only hope that it would occur during this limited period, otherwise he would not be cov-

ered." Although there are several documentary exhibits in evidence, including the original sales slip, work orders, and a *copy* of what Ramsey asserts his accountant should have given Maduro, totally absent is a standard warranty form made out in Maduro's name. Moreover, while the plaintiff definitely states that he never received one, the best defendant Ramsey could say of his own knowledge was that it was common practice to give such a form to all purchasers. In the absence of any definite evidence that plaintiff Maduro received a standard warranty form, I conclude that he did not. Not having received the paper, he clearly cannot be held to have knowingly accepted the disclaimer of the warranty of merchantability. This conclusion is in nowise affected by the fact that the same disclaimer is included in the owner's manual.

The commercial code is designed to protect the buyer from bearing the burden of loss where merchandise does not conform to normal commercial standards of meeting the buyer's "ordinary purpose for which such goods are used." The entire purpose behind the implied warranty sections of the Code is to hold the seller responsible when inferior goods are passed along to the unsuspecting buyer. Koellmer v. Chrysler Motors Corp., 6 Conn. Cir. 478, 276 A.2d 807, 811 (1970), cert. den. 274 A.2d 884, (1971), citing Vlases v. Montgomery Ward, 377 F.2d 846, 850 (3rd Cir. 1967).

The Koellmer case is particularly apposite to the case at bar. On the face of the purchase slip there involved, was written, "such vehicle is covered for 5 years or 50,000 miles per manufacturer's new car warranty". On the back of the same form, buried among a host of conditions, was a disclaimer clause, which also incorporated, by reference, similar conditions set forth in the owner's manual. After holding that the disclaimer on the back of the purchase form was ineffective for lack of conspicuousness, the Court went on to say:

Moreover, the conditions appearing in the owner's manual, standing alone, would not be binding, for a "mere delivery of a printed

and unexecuted form after the sale has been consummated would not bind the purchaser", 276 A.2d at 811.

In Ford Motor Co. v. Taylor, 446 S.W.2d 521, 532 (Tenn. App. 1969), another case reversing a holding of the trial court that the dealer had fulfilled his obligation under warranty, the appellate court stated,

It is insisted that the standard Ford warranty, delivered to plaintiff several days after the sale, excluded or modifies the statutory warranty. The preponderance of the evidence does not support such an insistence. The delivery of the written warranty subsequent to the sale is not sufficient to erase the statutory obligation which was created by the sale. There is no satisfactory showing that plaintiff ever accepted the written warranty as a substitute or an amendment of his rights.

See also Rehurek v. Chrysler Credit Corp., 262 So.2d 452, 455 (Fla. 1972).

Going on to the second point, adverted to above, section 2—316(3)(c) of the U.C.C. provides that "an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade," and defendant Ramsey Motors does, in fact, argue in its brief that warranties such as the one in question are common in the automobile business. We disagree. As the case law under the warranty sections of the Code has developed, those in the business of selling cars have gradually come to adopt what is known as the "standard car warranty". See, e.g., Jacobs v. Metro Chrysler-Plymouth, Inc., 125 Ga. App. 462, 188 S.E.2d 250 (1972); Ford Motor Co. v. Olive, 234 So.2d 910 (Miss. 1970); General Motors Corp. v. Earnest, 184 So.2d 811 (Ala. 1966). And see Annotation 99 A.L.R.2d 1421, "Standard New Motor Vehicle Warranty". Although varying according to the type and model automobile involved, this warranty generally states a maximum time and mileage limit during which it is valid, as well as explicit notice as to what it covers. That is, it usually guarantees that the

dealer or manufacturer will replace or repair parts which are defective in material or workmanship. This standard warranty also, in its disclaimer clause, conforms to section 2—316 by specifically disavowing the warranty of merchantability. The warranty in the instant case does neither. It is a bare "6 months or 6000 miles", conveying no idea of what parts or services are warranted or disclaimed. It is precisely this kind of ambiguity which leads to the unfair surprise to the buyer which the Code was designed to prevent. It is instructive to note that Mr. Ramsey states, in his deposition, that brakes are not warranted in the Virgin Islands because of the unique terrain and condition of the roads. (Deposition p. 12.) There was nothing in the warranty on the sales slip or even the model standard Ford warranty, which Mr. Maduro claims he never received, to this effect. Small wonder, then, that when plaintiff complained of brake problems *within* the warranty period, the demand for payment for the work done came as a surprise to him.

In a case in which the purchaser of a new automobile experienced many of the same difficulties as did Mr. Maduro, the Supreme Court of the State of Washington, in reversing two lower courts which had held for the seller, said:

. . . the burden is upon the dealer to show with particularity just what the buyer is waiving, that is, which particular defects or conditions the purchaser of a brand new automobile explicitly waives. Berg v. Stromme, 79 Wash.2d 184, 484 P.2d 380, 386 (1971).

That court also remarked,

in the sale by a dealer or retailer of a brand new automobile, the dealer impliedly warrants that the automobile is of merchantable quality and that the new car is fit to transport the driver and his passengers with reasonable safety, efficiency and comfort—according to the size, model and power of the vehicle. Waivers of such warranties, being disfavored in law, are ineffectual unless explicitly negotiated between buyer and seller and *set forth with particularity*

*showing the particular qualities and characteristics* of fitness which are being waived. 484 P.2d at 386. (Emphasis added.)

In Koellmer v. Chrysler Motors Co., supra, the court, in effect, held that by not being specific as to what was being warranted, the express warranty on the sales slip could not be inconsistent with, and therefore did not work cancellation of the implied warranty of merchantability.

It is further asserted that the "5 years or 50,000 mile" guarantee appearing on the face of the order form is controlling. Such an express warranty would not negate an implied warranty, since it is not inconsistent with an implied warranty.

By the same token, the 6 months or 6000 miles express warranty and the warranty of merchantability may properly be viewed as providing cumulative protection. See, e.g., Neville Chemical Co. v. Union Carbide Co., 294 F.Supp. 649, 656 (W.D. Pa. 1968).

■ Having established, then, that there was a warranty of merchantability which was not adequately disclaimed, the question remains whether that warranty was breached. Expectations of perfection are not wisely held in an age of mechanical domination. Nonetheless, the purchase of an automobile carries with it certain assumptions simply by the potentially dangerous, and expensive, nature of the item. As was noted in Zabriskie Chevrolet, Inc. v. Smith, 99 N.J.Super. 441, 240 A.2d 195, 202 (1968):

[Buyer] assumed what every new car buyer has a right to assume and, indeed, has been led to assume by the high-powered advertising techniques of the automobile industry—that his new car, with the exception of very minor adjustments, would be mechanically new and factory-furnished, operate perfectly, and be free of substantial defects.

Granted that no complaint of plaintiff, by itself, would constitute a substantial defect, the cumulative effect of so many things going wrong, most of them so soon after pur-

410

chase, strongly suggests that the automobile in question was a "lemon". The inconvenience caused by repeated breakdowns and repairs is compounded by the fact that plaintiff's livelihood as a cab-driver was dependent on this inferior machine. It would be manifestly unjust if no remedy were available to plaintiff solely because the final malfunction, the culmination of a long and continuing series, occurred after the time limitation set by an invalid warranty. There comes a time when continued repairs reach a point of diminishing return.

[A] buyer of an automobile is not bound to permit the seller to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty. At some point in time, if major problems continue to plague the automobile, it must become obvious to all people that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free of defect. Orange Motors of Coral Gables v. Dade Co. Dairies, 258 So.2d 319, 321 (Fla. App. 1972) (citations omitted).

[Further], the warranty not only warrants each separate part, but warrants all the parts as a whole. . . . Therefore, we must conclude that the warranty covers the automobile. . . . Ford Motor Co. v. Olive, 234 So.2d 910, 913 (Miss. 1970).

In the latter case, no sooner was one malfunction repaired than another broke forth. The court agreed with the buyer, that the automobile in question was a "piece of junk".

■ Although the evidence shows that defendant Ramsey Motors attempted to repair the automobile many times and actually absorbed much of the cost thereof, such laudable action does not gainsay the fact that the car was not of sufficient fitness to come within a definition of merchantability. In a similar case, in which the court reversed a finding that the dealer was not liable to the purchaser of a defective tractor, the court explained,

[dealer] pleads that he did all he could to satisfy plaintiff and that his liability should extend no further. The evidence does show that [dealer] exerted commendable efforts and incurred consider-

able expense in his efforts to correct the defects in the tractor. His actions in this regard, however commendable and however consistent with his written warranty, cannot relieve him of the unconditional obligation imposed by statute. Ford Motor Co. v. Taylor, supra, at p. 532.

The same applies to Ramsey's dealings with the plaintiff, and with equal force. The warranty of merchantability established by the Code, unless properly disclaimed or waived, is absolute, and cannot be negated, not even by the good faith efforts of a dealer to correct defects in the item sold.

■ It is unnecessary that the plaintiff, in an action for breach of warranty, name with particularity, the specific part of the vehicle which is defective, or the precise nature of the defect. It is enough if the car be unfit for its intended use, i.e., transportation. MacDougall v. Ford Motor Co., 214 Pa. Super. 384, 257 A.2d 676 (1969), involved a section 402(a) action for injuries caused by a defective automobile. The court, however, discussed and applied the evidentiary standards applicable in warranty cases, stating that,

[p]roof of the specific defect in construction or design causing a mechanical malfunction is not an essential element in establishing breach of warranty. "When machinery malfunctions," it obviously lacks fitness regardless of the cause of the malfunction. Under the theory of warranty, the "sin" is the lack of fitness as evidenced by the malfunction itself rather than some specific dereliction by the manufacturer in constructing or designing the machinery. 257 A.2d at 679, quoting from Greco v. Bucciconi Engineering Co., 283 F.Supp. 978 (D.C.W.D. Pa. 1967), aff'd 407 F.2d 87 (3rd Cir. 1969).

■ Plaintiff Maduro testified in his deposition that the car has been left standing, abandoned and unused, on his property since his last confrontation with Ramsey. (Deposition p. 35) Were this an action for rescission of the contract, the fact that the automobile was not returned to Ramsey Motors could preclude any recovery. However that may be, this is an action for damages in the amount of the

412

difference between the cost of the machine and the value thereof as of a given date. The uncontradicted testimony that the car has been unusable, despite lack of return to the dealer, is sufficient in an action for damages. "[R]ejection is not a prerequisite to an action by a buyer for damages for breach of warranty." Buff v. Giglio, 124 N.J. Super. 94, 304 A.2d 771, 773. This distinction was noted with approval in Hydrick v. Mehlman's Inc., 172 S.E.2d 824 (S.C. 1970), in which the court discussed plaintiff's election of remedies, i.e., a suit for damages or rescission.

> Where a sales contract involving personal property has been fully executed by payment of the purchase price and delivery of the property, and where the property purchased is not in keeping with the warranty, the purchaser has the choice of two remedies . . . . [A]n action for rescission must be brought within a reasonable time after the purchase price has been paid and the misrepresentation discovered. . . . In this case [one for damages], the action was brought twenty-three months after the purchase. 172 S.E.2d at 826.

It seems clear, then, that plaintiff's right to recover his damages would not be defeated by the mere fact that plaintiff did not return the car to the dealer.

On the issue of damages, Section 2—714(2) of the Code provides,

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted.

Section 2—714(3) further states that,

> In a proper case any incidental and consequential damages under the next section may also be recovered.

See also LeBlanc v. Neman Comet-Lincoln-Mercury, Inc., 6 Conn. Cir. 365, 273 A.2d 726, 729 (1970). The purchase price of plaintiff's car was $3,847. In his complaint he seeks a total of $7,527. Of the total sum claimed, the $5,525

represents plaintiff's alleged loss of income from his taxi business, as of the date of filing. (Were such loss made current to the present time, we would reach astronomic figures.)

The provision in Section 2—715 for consequential damages applies only where loss results from "requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise". Although plaintiff informed Ramsey, at the time of sale, and on several occasions when the car was in for repairs, that his livelihood as a cab-driver was at stake, we are of the opinion that Maduro has failed in his burden of proving damages of so great an amount, or indeed in any amount with the certainty required by law. Furthermore, according to his deposition, he has, with very brief intervals of exception, remained unemployed since the car broke down (Deposition pp. 39–41) despite the fact that he appears, from the record, to be an able-bodied male of 32 years of age. Under the circumstances, it would be inappropriate to compel Ramsey Motors, or Ford, to pay what would amount to unemployment compensation simply because its product was unmerchantable. Plaintiff's "lost profits" from the taxi business would, with minimal effort, have been at least partially mitigated by some form of gainful employment.

■ Plaintiff has brought this suit against both the dealer Ramsey Motors and the manufacturer of the car, Ford, and the municipal court dismissed as to both defendants. The requirement of vertical privity in breach of warranty suits has been abandoned and discredited in an increasing number of jurisdictions. Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177 (3rd Cir. 1972); Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848 (1968). Recovery by Maduro is proper against either Ford, as the original source of the defective item, or Ramsey Motors, as

Ford's authorized agent and as the immediate "seller" in the transaction.

Since Ford was clearly shown to be the origin of the defects, Ford should ultimately bear the expense of compensating plaintiff. This fact does not alter the rights of plaintiff against [the dealer] under the statute, and, if [the dealer], rather than Ford, should be called upon to pay the judgment herein, he will have his rights to seek reimbursement from Ford. Ford Motor Co. v. Taylor, 446 S.W.2d 521, 532 (Tenn.App. 1969).

The judgment is reversed and the cause remanded to the municipal court with instructions that it hold a hearing to determine the amount of damages to which plaintiff is entitled, consistent with this Opinion, any judgment entered to be against defendant Ramsey Motors, Inc.